United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 06-50013

)))))))))))))))))))))))))))

PLANNED PARENTHOOD OF CENTRAL TEXAS, PLANNED PARENTHOOD OF
HOUSTON AND SOUTHEAST TEXAS, PLANNED PARENTHOOD OF NORTH TEXAS,
PLANNED PARENTHOOD OF SAN ANTONIO AND SOUTH CENTRAL TEXAS,
PLANNED PARENTHOOD OF WEST TEXAS, and PLANNED PARENTHOOD OF THE
TEXAS CAPITAL REGION,

             Plaintiffs-Appellants,

    v.

EDUARDO J. SANCHEZ, Texas Commissioner of Health

             Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas
No. A03-CA-415 SS

---

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

    Six Planned Parenthood organizations located in Texas
(collectively, "Plaintiffs") appeal from the district court's
denial of their request for attorney's fees under 42 U.S.C.
§ 1988. This request came at the tail end of a multi-year
litigation prompted by the Texas Legislature's 2003 passage of
legislation barring the distribution of federal family planning
money to entities that perform abortion procedures. For the
reasons that follow, we AFFIRM the judgment of the district

court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 2003, the Texas Legislature passed Rider 8(b) to the General Appropriations Act 2004-2005 Biennium, 78th Leg., R.S., H.B. 1 (Tex. 2003) ("Rider 8"). Rider 8 prohibited the distribution of federal family planning funds to "individuals or entities that perform elective abortion procedures or that contract with or provide funds to individuals or entities for the performance of elective abortion procedures." On June 10, 2003, the Texas Department of Health ("TDH") sent each Plaintiff a letter declaring that, to maintain its eligibility for receipt of family planning funds, the Plaintiff must sign an affidavit pledging that it would no longer perform elective abortions, nor contract with or provide funds to any entity for the performance of elective abortions. The TDH letter requested that the affidavit be returned by June 30, 2003.

Instead of returning the affidavit, Plaintiffs filed suit against Eduardo J. Sanchez, the Texas Commissioner of Health (the "Defendant"). Plaintiffs alleged (1) that Rider 8 violated the Supremacy Clause by imposing additional requirements on Plaintiffs' receipt of federal funds, (2) that Rider 8 imposed an unconstitutional burden on a woman's right to obtain an abortion, and (3) that Rider 8 imposed an unconstitutional condition on Plaintiffs' eligibility for funds. Plaintiffs characterized their

suit as having been brought "pursuant to 42 U.S.C. § 1983."

On June 30, 2003, the district court granted Plaintiffs' request for a temporary restraining order, and on August 2, 2003, the district court issued a preliminary injunction barring the Defendant from enforcing Rider 8. Planned Parenthood of Cent. Tex. v. Sanchez, 280 F. Supp. 2d. 590 (W.D. Tex. 2003). The district court determined that Plaintiffs were likely to succeed on the merits of their Supremacy Clause claim, though the court found that this claim was not properly characterized as a § 1983 claim. Id. at 596-606. The district court also concluded that Plaintiffs were likely to succeed on the merits of one of their Fourteenth Amendment claims: that Rider 8 placed an unconstitutional condition on their receipt of federal funding. Id. at 606-09. In finding for the Plaintiffs, the district court adopted their argument that Rider 8 could not be interpreted to allow Plaintiffs to continue receiving TDH funds by creating independent legal affiliates to perform abortions. Id. at 611.

The Defendant filed an interlocutory appeal with this court, which handed down an opinion on March 11, 2005. Planned Parenthood of Houston & Se. Tex. v. Sanchez, 403 F.3d 324 (5th Cir. 2005). This court affirmed the district court's exercise of jurisdiction over Plaintiffs' Supremacy Clause claim, finding other grounds for jurisdiction even if § 1983 was not an available vehicle. Id. at 335. The court went on to explain, however, that Rider 8 did not violate the Supremacy Clause

-3-

because it could be construed to allow Plaintiffs to continue receiving TDH funds by establishing independent affiliates to perform abortion procedures. Id. at 337-42. The court noted that an affiliation requirement would not conflict with federal law if a "relatively empty formalism" but likely would conflict with federal law if a "more substantial obstacle." Id. at 342. The court remanded the case to the district court, with instructions that the injunction be dissolved "unless the Appellees carry their burden of demonstrating that the use of affiliates would so hinder their operations as to work in practical terms an impermissible prohibition by the State of Texas . . . ." Id. at 343. The court did not, however, address the district court's conclusion that Plaintiffs were likely to succeed on the merits of their Fourteenth Amendment unconstitutional conditions claim, which conclusion was a second basis for the district court's grant of a preliminary injunction.

Following this court's decision, the parties met and agreed that the TDH would by April 29, 2005, provide written guidelines setting out affiliation requirements, and that Plaintiffs would have until May 31, 2005, to comply with these guidelines or inform the Defendant that they would seek to avoid the dissolution of the district court's preliminary injunction. The TDH did issue written "Affiliation Requirements," and Plaintiffs took the necessary steps to establish legally separate affiliates to provide abortion services. Plaintiffs thereby maintained their

-4-

eligibility for receiving TDH family planning funds.

On July 29, 2005, Plaintiffs filed a motion with the district court for a declaratory judgment and for attorney's fees. On August 1, 2005, the Defendant filed a motion to dissolve the permanent injunction and for the entry of a final judgment dismissing Plaintiffs' claims with prejudice. On December 15, 2005, the district court entered an order and final judgment granting the Defendant's motion to dismiss and denying Plaintiffs' motion for a declaratory judgment as moot. The district court also denied Plaintiffs' request for attorney's fees, concluding that Plaintiffs were not a prevailing party within the meaning of 42 U.S.C. § 1988. This appeal by the Plaintiffs of the district court's ruling on attorney's fees followed.

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1291, we have jurisdiction over this appeal from the district court's December 15, 2005 final order and judgment.

This court reviews a district court's decision to award or deny attorney's fees pursuant to 42 U.S.C. § 1988 for abuse of discretion. Volk v. Gonzalez, 262 F.3d 528, 534 (5th Cir. 2001). The factual findings supporting the district court's decision are reviewed for clear error, and the conclusions of law de novo. Id. In Bailey v. Mississippi, 407 F.3d 684, 687 (5th Cir. 2005), this

court stated that following the Supreme Court's analysis in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001), "the characterization of prevailing-party status for awards under fee-shifting statutes such as § 1988 is a legal question subject to *de novo* review."

## III.  DISCUSSION

Plaintiffs assert their right to attorney's fees under 42 U.S.C. § 1988(b). This section provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee. . . ." Plaintiffs argue that they are entitled to attorney's fees on the basis of (1) the district court's August 2003 grant of a preliminary injunction against the enforcement of Rider 8; and (2) this court's March 2005 ruling on the parties' interlocutory appeals.

## A.  Preliminary Injunction

The district court granted a preliminary injunction to Plaintiffs based on the perceived likelihood of success of two of their claims: their Supremacy Clause claim, and their Fourteenth Amendment unconstitutional condition claim. We address initially whether either claim can support the award of attorney's fees under 42 U.S.C. § 1988(b).

### 1.  Plaintiffs' Fee-Supporting and Non-Fee-Supporting Claims

The availability of attorney's fees under § 1988(b) is

expressly limited to actions or proceedings to enforce certain enumerated provisions of federal law, including § 1983. The circuit courts that have addressed the issue have held that claims brought under the Supremacy Clause do not support an award of attorney's fees under § 1988. "[P]reemption of state law under the Supremacy Clause--being grounded not on individual rights but instead on considerations of power--will not support an action under § 1983, and will not, therefore, support a claim for attorneys' fees under § 1988." Segundo v. City of Rancho Mirage, 813 F.2d 1387, 1394 (9th Cir. 1987). "[F]ederal preemption of local ordinances pursuant to the Supremacy Clause is not actionable under Section 1983. Therefore, there can be no award of attorney's fees under Section 1988." Md. Pest Control Assoc. v. Montgomery County, 884 F.2d 160, 163 (4th Cir. 1989). See also Boston & Me. Corp. v. Town of Ayer, 330 F.3d 12, 18 (1st Cir. 2003); Gustafson v. City of Lake Angelus, 76 F.3d 788, 792 (6th Cir. 1996). In this case, the district court correctly held that Plaintiffs' Supremacy Clause claim was not actionable under § 1983. It follows that their Supremacy Clause claim, standing alone, would not support an award of attorney's fees under § 1988.

The district court's preliminary injunction order was also, however, based on Plaintiffs' Fourteenth Amendment unconstitutional condition claim. This was a claim that Rider 8

violates Plaintiffs' right to privacy under the Due Process
Clause of the Fourteenth Amendment because it bars them from
receiving a subsidy for "participat[ing] in the constitutionally
protected activity of providing abortion services to women."
Planned Parenthood, 280 F. Supp. 2d at 606.[1] Section 1983 is the
proper vehicle for a claim alleging that a state official has
violated the Plaintiffs' rights under the Fourteenth Amendment.
Section 1988 expressly authorizes a court to award a reasonable
attorney's fee to the prevailing party in a § 1983 action. 42
U.S.C. § 1988(b). Accordingly, Plaintiffs' unconstitutional
condition claim is a claim that supports an award of attorney's
fees under § 1988.

We have previously addressed situations where a plaintiff
brought a § 1983 claim that supports a grant of attorney's fees
and another claim that does not, and the court found in favor of
the plaintiff on the non-fee bearing claim but did not address
the § 1983 claim. Recognizing that courts will often justifiably
refrain from addressing a constitutional question where it can be
avoided, we have held that such a plaintiff may obtain attorney's
fees even though the § 1983 claim was not decided "provided that
1) the § 1983 claim of constitutional deprivation was
substantial; and 2) the successful pendant claims arose out of a

---

[1] We express no opinion on the merits of the district court's
conclusion that Plaintiffs were likely to succeed on this claim.

common nucleus of operative facts." <u>Sw. Bell Tel. Co. v. City of El Paso</u>, 346 F.3d 541, 551 (5th Cir. 2003) (internal quotation marks omitted). While this doctrine arose in the context of successful pendant state law claims, it has been used to award § 1988 fees to plaintiffs prevailing on non-fee-supporting federal statutory claims (<u>Espino v. Bestiero</u>, 708 F.2d 1002, 1008 (5th Cir. 1983)) as well as non-fee-supporting federal constitutional claims (<u>Gerling Global Reinsurance Corp. of Am. v. Garamendi</u>, 400 F.3d 803, 808 (9th Cir. 2005))(<u>cert. denied</u>, 126 S. Ct. 563 (2005)). Given our willingness to allow attorney's fees based on a successful pendant claim where the § 1983 claim was not addressed by the court, it would make no sense to deny attorney's fees for either claim where the § 1983 claim was also successful. Therefore, where a plaintiff prevails on both a § 1983 claim and a Supremacy Clause claim that are based on a "common nucleus of operative facts," the plaintiff may recover attorney's fees for both claims.

Here, because Plaintiffs' Supremacy Clause and unconstitutional condition claims arise from a common nucleus of operative facts, Plaintiffs would be entitled to attorney's fees on both claims if they could show that they qualify as "prevailing parties" on the basis of their success in obtaining a preliminary injunction from the district court.

>    2.    <u>Preliminary Injunction Did Not Entitle Plaintiffs to Prevailing Party Status</u>

### a. Supreme Court Precedent

The Supreme Court most recently addressed the meaning of "prevailing party" in Buckhannon, 532 U.S. 598. There the Court stated that a prevailing party exists where there is a "judicially sanctioned change in the legal relationship of the parties." Id. at 605. The Court noted that two circumstances that meet this test are "a judgment on the merits" and a "court-ordered consent decree." Id. The Court held, however, that parties were not entitled to attorney's fees under the "catalyst theory," that is, in circumstances in which a plaintiff "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id. at 600. The Court found that the catalyst theory failed because a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." Id. at 605.

### b. Caselaw on Preliminary Injunctions

Since Buckhannon, this circuit has not addressed under what circumstances, if any, a preliminary injunction may support an award of attorney's fees under § 1988. A number of other circuits have taken on this question, however, with varying analyses.

Several circuits have declared that a preliminary injunction that merely preserves the status quo ante will not create a "prevailing party." The Eleventh Circuit has stated that "a

-10-

preliminary injunction on the merits, as opposed to a merely temporary order which decides no substantive issues but merely maintains the status quo, entitles one to prevailing party status and an award of attorney's fees." <u>Taylor v. City of Fort Lauderdale</u>, 810 F.2d 1551, 1558 (11th Cir. 1987). An exception exists where a court later determines that the preliminary injunction that would otherwise support prevailing party status was granted by the district court through "a mistake in law." <u>Id.</u>[2] Similarly, the Eighth Circuit has stated that "a preliminary injunction granting temporary relief that merely maintains the status quo does not confer prevailing party status." <u>N. Cheyenne Tribe v. Jackson</u>, 433 F.3d 1083, 1086 (8th Cir. 2006). The court did allow that "some preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status." <u>Id.</u> An example of the latter is where the preliminary injunction "alters the course of a pending administrative proceeding and the party's claim for a permanent injunction is rendered moot by the impact of the preliminary injunction." <u>Id.</u>

Like the Eighth Circuit, the Seventh Circuit has held that a preliminary injunction may create prevailing party status where the case is mooted after the preliminary injunction is granted.

---

[2] <u>Taylor</u> is a pre-<u>Buckhannon</u> case, but the Eleventh Circuit reaffirmed its holdings in <u>Wyner v. Struhs</u>, 179 F. App'x 566, 568 (11th Cir. 2006) (unpublished) (<u>cert. granted</u>, 127 S. Ct. 1055 (2007)).

The Seventh Circuit has interpreted the Supreme Court's precedent on fee awards to hold that "once a plaintiff obtains substantive relief that is not defeasible by further proceedings, he can seek interim fees and the district court has the power to award them." Dupuy v. Samuels, 423 F.3d 714, 719 (7th Cir. 2005). The Seventh Circuit stated that while there is no "hard and fast rule that a preliminary injunction can never be an adequate predicate" for an attorney's fees award, an injunction that merely "constrains the defendants' conduct until it is reversed" cannot support a fee award. Id. at 723; Palmer v. City of Chi., 806 F.2d 1316, 1321-22 (7th Cir. 1986). Attorney's fees would be available, however, where "the plaintiffs had obtained a preliminary injunction, and the case was mooted before they sought attorneys' fees." Dupuy, 423 F.3d at 723.

Using a slightly different analysis, the Sixth Circuit has held that "[a] preliminary injunction can suffice" to create prevailing party status. Sandusky County Democratic Party v. Blackwell, 191 F. App'x 397, 399 (6th Cir. 2006). However, "there is only prevailing party status if the injunction represents 'an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of the equities greatly favors the plaintiff.'" Dubuc v. Green Oak Twp, 312 F.3d 736, 753 (6th Cir. 2002) (quoting Webster v. Sowders, 846 F.2d 1032, 1036 (6th Cir. 1988)). The D.C. Circuit

has concluded that "Buckhannon surely does not endorse a *per se* rule that a preliminary injunction can *never* transform a party in whose favor the injunction is issued into a 'prevailing party'. . . ." Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 945 (D.C. Cir. 2005). The D.C. Circuit determined that the plaintiff who was granted a preliminary injunction qualified as a prevailing party where the plaintiff obtained substantial relief and the defendant declined to appeal the injunction. Id. at 947-50. While citing a number of "mootness" cases, the D.C. Circuit suggested that there are other situations in which a preliminary injunction may create a prevailing party. Id.

The Ninth Circuit has also taken a relatively generous approach, at least in principle, stating that a "preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy Buckhannon." Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002). Like several other circuits, the Ninth Circuit has allowed attorney's fees in cases where a party obtained a preliminary injunction and then the case was subsequently mooted. Id.; Williams v. Alioto, 625 F.2d 845, 847 (9th Cir. 1980). The Ninth Circuit did note, however, that

> there will be occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him--a case of winning the battle but losing the war. The plaintiff would not be a prevailing party in that circumstance.

Watson, 300 F.3d at 1096.

-13-

By contrast, the Fourth Circuit has expressed strong skepticism that a preliminary injunction could ever serve as the basis for prevailing party status. The court explained that "[w]hile granting such an injunction does involve an inquiry into the merits of the party's claim . . . and is, like any court order, 'enforceable,' the merits inquiry in the preliminary injunction context is necessarily abbreviated." Smyth v. Rivero, 282 F.3d 268, 276 (4th Cir. 2002). The court declared that

> [t]he interplay of [] equitable and legal considerations and the less stringent assessment of the merits of claims that are part of the preliminary injunction context belie the assertion that the district court's decision to grant a preliminary injunction was "an enforceable judgment on the merits" or something akin to one for prevailing party purposes.

Id. at 277 (citing Buckhannon, 121 S. Ct. at 1840.)

### c. Analysis

We need not at this time choose between the approaches used by our sister circuits, because Plaintiffs fail to qualify as prevailing parties under any of these approaches. The preliminary injunction obtained by Plaintiffs involved a necessarily abbreviated inquiry into the merits coupled with a weighing of likely harms, and therefore would fail under the Fourth Circuit's restrictive approach. By barring the initial enforcement of Rider 8, and thereby maintaining the flow of federal funds to Plaintiffs, the preliminary injunction preserved the status quo between the parties. It therefore fails to create a prevailing

-14-

party under the Eighth and Eleventh Circuit's approaches.
Moreover, this case was not mooted after the preliminary
injunction was granted, nor did the Defendant fail to appeal. Far
from upholding the district court's order on appeal, this court
disagreed with the district court's conclusion that Rider 8 did
not allow for affiliation and, as a consequence, rejected the
district court's preliminary determination that Rider 8 violated
the Supremacy Clause. Planned Parenthood, 403 F.3d at 337-42. We
remanded the case to the district court with instructions that
the injunction be dissolved unless Plaintiffs could show that
"the burden of forming affiliates in forthcoming years would in
practical terms frustrate their ability to receive federal
funds." Id. at 342.[3] We thus placed the burden of avoiding the
dissolution of the injunction squarely on the Plaintiffs.
Plaintiffs did not seek to avoid the dissolution of the
injunction, and it was dissolved. Accordingly, this case
resembles the scenario described by the Ninth Circuit as failing
to create prevailing party status: "the plaintiff scores an early
victory by securing a preliminary injunction, then loses on the
merits as the case plays out and judgment is entered against him

---

[3] This court did not address Plaintiffs' Fourteenth Amendment
unconstitutional condition claim, which the district court had
also found likely to succeed, in its March 2005 opinion. By
remanding the entire case to the district court with instructions
to dissolve the injunction, however, we implicitly rejected that
claim as well.

-15-

. . . ." <u>Watson</u>, 300 F.3d at 1096. We hold that the preliminary injunction that Plaintiffs obtained before the district court does not entitle them to prevailing party status.

## B.    Fifth Circuit Decision

Plaintiffs also maintain that they should be considered prevailing parties on the basis of this court's March 2005 decision. They argue that they prevailed in the litigation because they were able to continue receiving TDH funding and because TDH was compelled to issue guidelines for affiliation that were a "relatively empty formalism." As the above discussion suggests, we do not believe that Plaintiffs may be deemed the prevailing party on the basis of this court's March 2005 decision.

It is true that, at the termination of the litigation, Plaintiffs maintained their TDH funding while continuing (through the vehicle of independent affiliates) to perform abortions, and it is true that this court's suggestion that the affiliation requirement must not present a "substantial obstacle" benefitted the Plaintiffs. It is also true, however, that in its March 2005 opinion, this court adopted a position that had been maintained by the *Defendant* throughout this litigation.[4]

---

[4] This is a feature that distinguishes this case from <u>Walker v. City of Mesquite</u>, 313 F.3d 246 (5th Cir. 2002), a case relied upon by Plaintiffs. In <u>Walker</u>, where we concluded that the plaintiffs did have prevailing party status, "this court held . . . that the remedial order was unconstitutional for precisely the

-16-

In the Defendant's response to Plaintiffs' application for a temporary restraining order, the Defendant pointed to <u>Planned Parenthood of Mid-Missouri & E. Kansas, Inc. v. Dempsey</u>, 167 F.3d 458 (8th Cir. 1999), a case where the Eighth Circuit had saved the constitutionality of a statute similar to Rider 8 by construing the statute to permit grantees of funds to engage in abortion services through independent affiliates. The Defendant argued that "Rider 8 can be interpreted in the same way as the Missouri statute" and that Plaintiffs "can establish affiliates and meet the requirements of Rider 8." The Defendant reasserted this argument by reference in his response to Plaintiffs' application for a preliminary injunction. And in his appeal to this court, the Defendant, proposing that the district court could have construed Rider 8 in a way that would not raise constitutional issues, again cited <u>Dempsey</u> and asserted that "nothing in Rider 8 prohibits the creation of such affiliates." By contrast, Plaintiffs throughout this litigation maintained that Rider 8 could not be construed to allow affiliation. We cannot reasonably deem Plaintiffs the prevailing parties where the highest court to hear their claims rejected their litigation position and embraced that of the Defendant.

Plaintiffs are correct that the TDH's June 2003 letter to

---

reasons argued by the [plaintiffs] in their request for declaratory relief." <u>Id.</u> at 250.

-17-

Plaintiffs did not mention the possibility of affiliation and that guidelines for affiliation were not at that time in place. Immediately following the passage of Rider 8, the TDH seemed to adopt a strict interpretation of Rider 8 that would prohibit Plaintiffs from contracting with entities that perform abortions. Had Plaintiffs not commenced this lawsuit, it is possible that the Defendant would not have embraced the position that Rider 8 could be construed to permit affiliation. But to conclude that the Defendant's change in position makes Plaintiffs the prevailing parties in the litigation would be to adopt the catalyst theory rejected by the Supreme Court in <u>Buckhannon</u>, 532 U.S. 598. Accordingly, we hold that Plaintiffs are not prevailing parties in the litigation and are not entitled to attorney's fees.

## IV.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court denying attorney's fees to Plaintiffs.

AFFIRMED